Gayle M. Blatt, SBN 122048
*gmb@cglaw.com*
P. Camille Guerra, SBN 326546
*camille@cglaw.com*
**CASEY GERRY SCHENK**
**FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811
Facsimile: (619) 544-9232

*Attorneys for Plaintiff and the Proposed Class*

[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL MORENO, individually and on behalf of all others similarly situated, | Case No.: 2:21-cv-2666 |
| Plaintiff, | **CLASS ACTION** |
| v. | **JURY TRIAL DEMANDED** |
| JOHNSON & JOHNSON CONSUMER INC., | |
| Defendant. | |

1

**CLASS ACTION COMPLAINT**

## CLASS ACTION COMPLAINT

Plaintiff, Daniel Moreno ("Plaintiff"), on behalf of himself and all others similarly situated, brings this class action against Defendant Johnson & Johnson Consumer Inc. ("Johnson & Johnson" or "Defendant") and alleges on personal knowledge, investigation of his counsel, and on information and belief as follows:

## INTRODUCTION AND SUMMARY OF CASE

1.     This is a consumer class action brought individually by Plaintiff and on behalf of all persons in the below-defined proposed Nationwide Class and California Subclass (collectively, the "Class"), all of whom purchased one or more OGX branded Shampoo and Conditioner Products (collectively, the "Products" or "OGX Products") for personal or household use, and not for resale.

2.     Plaintiff purchased OGX shampoo and conditioner because of Defendant's false representation that the Products would nourish hair for a full, healthy look. Unbeknownst to Plaintiff and members of the proposed Class, and contrary to the representations on the Products' label, the Products contain an ingredient or combination of ingredients that causes significant hair loss and/or scalp irritation upon proper application. At least one ingredient in the Products, DMDM hydantoin, is a formaldehyde donor known to slowly leach formaldehyde after its contact with water. Formaldehyde is a human carcinogen that is known to cause cancer and other harmful reactions when absorbed into skin.

3.      Defendant has used DMDM hydantoin as a preservative in its products for well over a decade.  The use of DMDM hydantoin as a preservative creates an entirely unnecessary risk because various safer natural alternatives exist and as a result, the Products are dangerous and unsafe for sale as over-the-counter hair smoothing shampoo products.

4.      Defendant failed to properly warn consumers of the risks and dangers attendant to the use of such a strong ingredient on their hair and scalp – even well after Defendant knew or should have known of the Products' hazards. Defendant continued to conceal the dangers of the Products by failing to appropriately and fully recall the Products, by continuing to claim the Products were safe when properly applied, and by failing to warn consumers of the dangers attendant to the Products' use. Plaintiff and Class Members were, as reasonable consumers acting reasonably under the circumstances, unaware of the inclusion of DMDM hydantoin in the Products and the risks and dangers associated with the use of such products as to their hair and scalp.

5.      As a result, the Products' labeling is deceptive and misleading.

6.      Plaintiff and the members of the proposed Class, as defined below, thus bring claims for consumer fraud and seek damages, injunctive and declaratory relief, interest, costs, and attorneys' fees.

**CLASS ACTION COMPLAINT**

**PARTIES**

7.      Plaintiff Daniel Moreno, is and was at all times relevant to this matter, a resident of the state of California residing in the city of Los Angeles.

8.      Defendant Johnson & Johnson is a New Jersey corporation with its headquarters located in New Brunswick, New Jersey. At all times Defendant manufactured, marketed, designed, promoted and/or distributed the Products nationwide, including in California.

**JURISDICTION AND VENUE**

9.      This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2) because the claims of the members of the proposed Class exceed $5,000,000 and because Plaintiff and Defendant are citizens of a different states. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

10.      This Court has personal jurisdiction over Defendant because Defendant regularly sells and markets products and conducts business in this District and/or under the stream of commerce doctrine by allowing products to be sold in this District, including the Products.

11.      Pursuant to 28 U.S.C. § 1391(a), venue is proper because a substantial part of the events giving rise to the claims asserted occurred in the Central District

CLASS ACTION COMPLAINT

of California. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendant conducts substantial business in this District, has sufficient minimum contacts with this District, and otherwise purposely avails itself of the markets in this District, through the promotion, sale, and marketing of the Products in this District.

## BACKGROUND AND GENERAL ALLEGATIONS

### A. Johnson & Johnson's Business.

12. In 1886, Johnson & Johnson was founded to develop medical devices, pharmaceuticals, and consumer products.

13. Johnson & Johnson boasts that its corporation includes over 250 subsidiary companies with operations in 60 countries and worldwide sales over 70 billion dollars across 175 countries.

14. Johnson & Johnson's brands include numerous well-known pharmaceutical, medical device, and consumer product companies. In addition to OGX, Johnson & Johnson's consumer brands include Neutrogena, Aveeno, Listerine, Band-Aid, Tylenol, and Johnson's.

15. In 2016, Johnson & Johnson acquired Vogue International for US $3.3 billion in cash. The acquisition included many large beauty products, including the OGX line of products. At the time of the announcement, Johnson & Johnson claimed that the "acquisition of Vogue International's full line of leading advanced hair care

products sold in the U.S. and in 38 countries will strengthen our global presence in this important category. Vogue International's commitment to quality, innovation, and consumer preference complement our Consumer portfolio, while also presenting attractive hair care category growth opportunities for Johnson & Johnson."[1]

16.    Johnson & Johnson represents itself and its OGX brand to be a global "leader in the hair industry with its award-winning shampoos, conditioners and hair stylers" and "designed for consumers who want to make better choices about the products they use and lifestyle they live."[2]

17.    As part of its OGX brand, Johnson & Johnson sells the Products at issue here.

**B.    DMDM Hydantoin and Johnson & Johnson's Broken Promise to Remove it from Personal Care Products.**

18.    There are numerous preservatives that are used in cosmetics and hair products, including formaldehyde donors; many of which have been linked to the development of allergies, dermatitis, hair loss, and even cancer.

19.    Specifically, formaldehyde donors are preservatives that are "added to

---

[1] *See* Press Release, "Johnson & Johnson Announces Agreement to Acquire Vogue International", dated June 2, 2016, found at
https://www.prnewswire.com/news-releases/johnson--johnson-announces-agreement-to-acquire-vogue-international-300278443.html (last accessed on Mar. 4, 2021).
[2] *See* Press Release, " OGX Beauty Launches New Global Campaign, Inspiring Everyone to Rock What You Got", dated April 10, 2017, found at https://www.prnewswire.com/news-releases/ogx-beauty-launches-new-global-campaign-inspiring-everyone-to-rock-what-you-got-300437544.html (last accessed March 4, 2021)

**CLASS ACTION COMPLAINT**

water-containing cosmetics (which includes personal care products/toiletries) to prevent the growth of micro-organisms that may enter during manufacture or during their usage."[3]

20.    Despite having intimate knowledge of the risks of using formaldehyde donor preservatives since at least 2012, Johnson & Johnson continues to use formaldehyde donors, DMDM hydantoin (also known as DMDM-h) and sodium hydroxyl, in its OGX products despite removing the preservative from nearly all other consumer products in 2015.

21.    "DMDM hydantoin (dimethylodimethyl hydantoin) is a formaldehyde donor used as a preservative in cosmetic products at concentrations up to 1%."[4] In other words, it is a formaldehyde-releasing preservative ("FRP") used to lengthen the shelf life of personal care products, including hair products.

22.    "An important source of human skin contact with formaldehyde is the use of cosmetics containing formaldehyde-releasers as preservatives."[5]

23.    In personal care products, such as shampoo, "formaldehyde can be added directly, or more often, it can be released from preservatives such as…

---

[3] de Groot AC, White IR, Flyvholm MA, Lensen G, Coenraads PJ. Formaldehyde-releasers in cosmetics: relationship to formaldehyde contact allergy. Part 1. Characterization, frequency and relevance of sensitization, and frequency of use in cosmetics. Contact Dermatitis. 2010 Jan;62(1):2-17. doi: 10.1111/j.1600-0536.2009.01615.x. PMID: 20136875.
[4] "Patch test reactivity to DMDM hydantoin, Relationship to formaldehyde allergy." By Anton C. DeGroot, Theodoor Van Joost, Jan D. Bos, Harrie L.M. Van Der Meeren, and J. Willem Weyland (*Contact Dermatitis*, 1988, 18:197-201).
[5] De Groot AC, *supra* note 15.

**CLASS ACTION COMPLAINT**

DMDM hydantoin." Specifically, the formaldehyde donor will "release small amounts of formaldehyde over time."[6]

24.     "In 1984, DMDM hydantoin ranked 9th in the list of the most frequently used cosmetic preservatives in the USA."[7]   By 1987, DMDM hydantoin (or "DMDMH" for short) was included in approximately 115 product formulas filed with the FDA, most frequently in shampoos.[8]

25.     "DMDMH was the 21st most common allergen in the 2005-2006 NACDG standard series. DMDMH is a preservative that contains 0.5% to 2% free formaldehyde and over 17% combined formaldehyde."[9]

26.     For many decades, since the 1970's, if not earlier, studies and patch tests were being performed to determine human reactivity to DMDM hydantoin,[10] including specifically the "relationship between contact allergy to formaldehyde," including "test reactions to DMDM hydantoin."[11]

27.     One study performed in 1987 specifically examined "whether the

---

[6] http://www.safecosmetics.org/get-the-facts/chemicals-of-concern/formaldehyde/ (Last Accessed Mar. 4, 2021).
[7] "Patch test reactivity to DMDM hydantoin, Relationship to formaldehyde allergy." By Anton C. DeGroot, Theodoor Van Joost, Jan D. Bos, Harrie L.M. Van Der Meeren, and J. Willem Weyland (Contact Dermatitis, 1988, 18:197-201).
[8] Id.
[9] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2958195/ (citing Rietschel RL, Fowler JF., Jr . Fisher's Contact Dermatitis. 5th ed. Philadelphia: Lippincott Williams & Wilkins; 2001).
[10] Tudela E, MacPherson C, Maibach HI. Long-term trend in patch test reactions: a 32-year statistical overview (1970-2002), part II. Cutan Ocul Toxicol. 2008;27(3):187-202. doi: 10.1080/15569520802143436. PMID: 18988088.
[11] "Patch test reactivity to DMDM hydantoin, Relationship to formaldehyde allergy." By Anton C. DeGroot, Theodoor Van Joost, Jan D. Bos, Harrie L.M. Van Der Meeren, and J. Willem Weyland (Contact Dermatitis, 1988, 18:197-201).

**CLASS ACTION COMPLAINT**

presence of DMDM hydantoin in cosmetics may cause adverse effects in patients pre-sensitized to formaldehyde."[12] The conclusion even more than twenty years ago was that "aqueous solutions of DMDM hydantoin, in concentrations comparable to those used in cosmetic products, contain enough free formaldehyde to cause dermatitis…," and that despite earlier conclusions that DMDM hydantoin is a safe cosmetic ingredient, "data suggest that an increase in the use of this preservative may also increase the risk of cosmetic dermatitis in patients allergic to formaldehyde."[13] The authors further suggest that cosmetic products with FRPs should have warnings that the products "'contain formaldehyde'… whether present as free formaldehyde or bound by a donor."[14]

28.   Several more recent studies, including a 2015 study "determined that longer storage time and higher temperature increase the amount of formaldehyde released from FRPs and could ultimately lead to more severe health concerns."[15]

29.   In other words, "reactions that generated formaldehyde occur silently as the products sit on shelves in stores or bathroom cabinets."[16]

30.   Formaldehyde is a known human carcinogen and is recognized as such

[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] http://www.safecosmetics.org/get-the-facts/chemicals-of-concern/formaldehyde/ (Last Accessed October 21, 2020)(citing Lv, C., Hou, J., Xie, W., & Cheng, H. (2015). Investigation on formaldehyde release from preservatives in cosmetics. International journal of cosmetic science.).
[16] https://www.ewg.org/research/exposing-cosmetics-cover-up#formaldehyde (Last Accessed October 21, 2020).

9

**CLASS ACTION COMPLAINT**

by the United States National Toxicology Program and the International Agency for Research on Cancer.[17]

31.    In 2009, prior to the sale of the Products, "a review of the literature on occupational exposures and formaldehyde shows a link between formaldehyde and leukemia."[18]

32.    In June 2011, the National Toxicology Program, an interagency program of the Department of Health and Human Services, named formaldehyde as a known human carcinogen in its *12th Report on Carcinogens.*[19]

33.    With specific regard to FRPs, like DMDM hydantoin, "the formaldehyde released from FRPs has been linked to cancer, but there is little evidence that FRPs directly cause cancer. However, a mixture of the FRP bromopol and amines, which form nitrosamines, has been found to penetrate skin and cause cancer."[20]

34.    Further, a study in 2010 concluded that although "[i]t has been long accepted that formaldehyde-releaser sensitization is attributable to released

---

[17] http://www.safecosmetics.org/get-the-facts/chemicals-of-concern/formaldehyde/ (Last Accessed October 21, 2020)(citing International Agency for Research on Cancer. "IARC classifies formaldehyde as carcinogenic to humans." Press release. June 15, 2004. Accessed January 9, 2009.).

[18] http://www.safecosmetics.org/get-the-facts/chemicals-of-concern/formaldehyde/ (Last Accessed October 21, 2020)( Zhang et al 2009. Meta-analysis of formaldehyde and hematologic cancers in humans. Mutation Research 681: 150-168).

[19] National Toxicology Program (June 2011). Report on Carcinogens, Twelfth Edition. Department of Health and Human Services, Public Health Service, National Toxicology Program. (Last Accessed on March 3, 2021 from: http://ntp.niehs.nih.gov/go/roc12.)

[20] http://www.safecosmetics.org/get-the-facts/chemicals-of-concern/formaldehyde/ (Last Accessed October 21, 2020)(citing to http://www.cosmeticsinfo.org/nitrosamines. Accessed September 23, 2015).

10

**CLASS ACTION COMPLAINT**

formaldehyde. However, clinical studies show the existence of patients allergic to formaldehyde-releasers but not to formaldehyde itself."[21] That same study found DMDM hydantoin to be "reactive per se."

35.     Consequently, it is unsurprising that DMDM hydantoin is considered by the U.S. Food & Drug Administration as one of the top allergens "that cause the most allergic reactions from the use of cosmetic products."[22]

36.     Specifically, DMDM hydantoin can "trigger the immune system to release chemical substances such as antibodies," resulting in reactions such as itchiness, red rashes on the skin, or more extreme reactions.[23]

37.     Further, as a person becomes more exposed to an irritant over time, including DMDM hydantoin, the likelihood and severity of the reaction increase. This is called irritant contact dermatitis ("ICD"), which "can occur in any person if the amount and duration of irritant exposure are sufficient to cause direct epidermal keratinocyte damage."[24]

38.     Likewise, the irritation of the scalp, including dermatitis, has been linked to hair brittleness and hair loss. Specifically,

---

[21] Kireche M, Gimenez-Arnau E, Lepoittevin JP. Preservatives in cosmetics: reactivity of allergenic formaldehyde-releasers towards amino acids through breakdown products other than formaldehyde. Contact Dermatitis. 2010 Oct;63(4):192-202. doi: 10.1111/j.1600-0536.2010.01770.x. Epub 2010 Aug 20. PMID: 20731691.
[22] https://www.fda.gov/cosmetics-ingredients/allergens-cosmetics (Last Accessed October 21, 2020).
[23] https://www.fda.gov/cosmetics-ingredients/allergens-cosmetics (Last Accessed October 21, 2020).
[24] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2958195/

11

**CLASS ACTION COMPLAINT**

A number of observations have found that premature hair loss may be caused by the poor scalp health associated with either dandruff and seborrheic dermatitis, or psoriasis, indicating that the effect on the preemergent hair fiber may alter the anchoring force of the fiber with the follicle, as evidenced by an increased proportion both of catagen and telogen, and of dysplastic anagen hairs (anagen hairs devoid of hair root sheaths) in the trichogram (hair pluck).[25]

39.     In 2012, following formaldehyde being identified as a carcinogen by the National Toxicology Program, Johnson & Johnson announced that it would "remove a host of potentially harmful chemicals, *like formaldehyde*, from its line of consumer products by the end of 2015."[26] [Emphasis Added].

40.     Like many other beauty manufacturers, Johnson & Johnson has been using DMDM hydantoin as a preservative in its products since before 2011; and like many manufacturers moved away from toxic ingredients, including DMDM hydantoin, starting in 2012.   However, Johnson & Johnson continues to use this formaldehyde donor today in various OGX branded products.

41.     Notably, despite continuing to use FRPs in its some adult products,

---

[25] Trueb, Ralph M., Henry, Jim P., Davis, Mike G., and Schwartz, Jim R., Scalp Condition Impacts Hair Growth and Retention via Oxidative Stress, Int J Trichology. 2018 Nov-Dec; 10(6): 262–270, doi: 10.4103/ijt.ijt_57_18.

[26] https://www.nytimes.com/2012/08/16/business/johnson-johnson-to-remove-formaldehyde-from-products.html

**CLASS ACTION COMPLAINT**

Johnson & Johnson proudly announced to the public that FRPs, like DMDM hydantoin, were not used in baby care products.[27]

42.     As Johnson & Johnson is aware, there is a litany of alternative preservatives that can be used in shampoos and cosmetics that do not release known human carcinogens and are non-synthetic, including:

   a.  Glyoxylic acid (or derivatives thereof);

   b.  Potassium sorbate and sorbic acid;

   c.  Citric acid and its salts;

   d.  Rosemary oil extract;

   e.  Neem oil extract;

   f.  Lavender oil;

   g.  Grapefruit seed extract;

   h.  Vinegars; and

   i.  Others.

43.     In addition to these alternatives, Johnson & Johnson also could have used lower levels of DMDM hydantoin; however, the risk of development and exacerbation of sensitivity or allergic reaction would still exist through repeated and prolonged use.

---

[27] https://www.businesstoday.in/current/corporate/our-baby-shampoo-does-not-contain-formaldehyde-johnson--johnson/story/354855.html (Last Accessed February 26, 2021).

CLASS ACTION COMPLAINT

44.     Upon information and belief, Johnson & Johnson uses alternative preservatives in other OGX products and, in fact, uses alternative preservatives in these exact OGX Products that are sold in other countries.

**C.     Johnson & Johnson's Misrepresentations Regarding the OGX Products.**

45.     Johnson & Johnson took over production and manufacturing of the OGX Products in 2016.  The Products were sold by Johnson & Johnson directly and through retail shops to consumers nationwide, including in California.

46.     The OGX Products state, on the front of the bottles' labels, that the Products are formulated with various oils, fruits, and botanicals that are intended to nourish and revive damage or dry hair, add softness and shine, and prevent frizzing and tangling; and that the OGX Products "deeply nourish," "gently cleanse," and "repair hair."

47.     Plaintiff and the Class did not and would not expect that application of the Products would or could cause hair loss and scalp irritation upon proper application.

48.     Plaintiff and the Class reasonably expected a warning regarding any potential hazard to consumers, especially because the Food, Drug and Cosmetic Act regulations provide that cosmetics that may be hazardous to consumers must bear

**CLASS ACTION COMPLAINT**

appropriate warnings.[28]

49.     Johnson & Johnson continues to this day to advise consumers that these Products are safe to use as directed, without providing any disclosure concerning the complaints of hair loss and with no warnings regarding the hair loss that may result from their continued use. Indeed, despite Johnson & Johnson's knowledge and awareness of hundreds if not thousands of online complaints of significant hair loss and breakage caused by the Products, Johnson & Johnson continues to sell the Products without providing consumers with *any* revised warnings or disclosures.

50.     The Products are marketed and sold at retail stores such as CVS, Target, Walgreens, Ulta, and Walmart, and through e-commerce websites such as Amazon.com, CVS.com, Target.com, Walgreens.com, Ulta.com, and Walmart.com.

51.     Defendant manufactures, advertises, markets, distributes and sells the Products in several sizes throughout the United States, including in California.

**D.     Defendant's False and Deceptive Advertising and Labeling of the Products.**

52.     In violation of 21 U.S.C. § 362(a) and 21 C.F.R. § 701.1(b), Defendant has consistently, falsely and deceptively advertised and labeled the Products in an effort to make consumers believe that the Products' ingredients, including DMDM

---

[28] *See* http://www.fda.gov/Cosmetics/CosmeticLabelingLabelClaims.

**CLASS ACTION COMPLAINT**

hydantoin, are safe for use.

53.     Since launching the Products, Defendant has consistently conveyed its uniform, deceptive message to consumers throughout the United States, including the state of California, that the Products formulated with formaldehyde donors, including DMDM hydantoin, are safe for use.

54.     These uniform deceptive claims have been made and repeated across a variety of platforms, including Defendant's Products' labels, websites and online promotional materials, and at the point-of-purchase, where they cannot be missed by consumers. In truth, Defendant's claims that DMDM hydantoin is a safe ingredient are false, misleading, and deceptive because the Products' ingredients, including DMDM hydantoin, are not safe, and may cause serious scalp irritation and hair loss, and do not safely smooth, nourish, cleanse, and/or repair hair.

55.     Upon information and belief, Johnson & Johnson knowingly permitted the manufacture and sale of the Products that were dangerous and unfit for use as a consumer hair product.

56.     Prior to placing the Products into the stream of commerce for sale to Plaintiff and the putative Class, Defendant was or should have been aware that the Products contained one or more unsafe ingredients, including DMDM hydantoin, that could cause significant hair loss and scalp irritation upon proper application and that any instructions and warnings provided with the Products to consumers were

**CLASS ACTION COMPLAINT**

materially insufficient.

57.     Defendant knew, or but for its reckless indifference would have known, prior to Plaintiff and the putative Class's purchases of the Products that it would continue to receive complaints of irritation, allergic reaction, and/or hair loss attributed to the Products' use.

58.     Defendant knew, or but for its reckless indifference would have known, that: (a) the risk of scalp irritation and hair loss was substantial, if not a certain, (b) its  customers were unaware of that substantial risk, and (c) those customers had a reasonable expectation that Johnson & Johnson would not sell the Products under posing those dangers.

59.     Despite such knowledge, Defendant did not disclose to prospective purchasers, that there was a substantial risk of scalp irritation and hair loss associated with use of the Products. Defendant instead continued to claim that the Products' ingredients, including DMDM hydantoin, were safe.

60.     However, despite the representation that the Products "gently" cleanse, the Products contain one or more ingredients, including DMDM hydantoin, that is a known formaldehyde donor that can cause scalp irritation and hair loss.

61.     Defendant reinforces its material omissions with false and deceptive claims that the Products "nourish", "smooth", "revive", "soften" and leave hair in great condition through the websites of various authorized retailers and on its own

**CLASS ACTION COMPLAINT**

1  product websites.

2       **E.      The Impact of Defendant's False, Misleading and Deceptive**
3              **Advertising.**

4

5       62.     Defendant has and continues to intend for consumers to rely upon its

6  material omissions and affirmative misrepresentations regarding the Products'

7

8  safety, including its deceptive representations on the Products' labels; accordingly,

9  reasonable consumers, including Plaintiff and the Class, did, in fact, rely on

10

11  Defendant's material omission and affirmative misrepresentations. These

12  representations are often the only source of information consumers can reasonably

13

14  make use of to make decisions concerning whether to buy and use such products.

15       63.     Consumers lack the ability to test or independently ascertain the

16  genuineness of product claims of normal everyday consumer products, especially at

17

18  the point-of-sale. Reasonable customers must therefore rely on consumer product

19  companies, such as Defendant, to honestly represent their Products and the Products'

20

21  attributes on the Products' labels.

22       64.     At all relevant times, Defendant directed the above-referenced

23  Products' labels, statements, claims and innuendo – including that the Products are

24

25  gently and smooth, and clean, nourish, strengthen, revive, and repair the hair with

26  safe ingredients – to consumers in general, and Plaintiff and all Class Members in

27  particular, as evidenced by their eventual purchases of the Products.

28

**CLASS ACTION COMPLAINT**

65.    Plaintiff and Class Members reasonably relied on Defendant's Product labels, statements, advertisements, claims and innuendo in deciding to purchase the Products and were thereby deceived.

66.    As a result of Defendant's deceptive labeling and/or marketing campaign, Defendant caused Plaintiff and putative Class Members to purchase the Products, which contained one or more unsafe ingredients, including DMDM hydantoin, and do not safely nourish, cleanse, and/or repair hair.  Plaintiff and putative Class Members have been harmed, as they would not have purchased the Products had they known the Products were not safe and would or could cause scalp irritation and hair loss.

67.    As a result of Defendant's misconduct, Defendant was able to sell the Products to thousands or more consumers throughout the United States— including Plaintiff and putative Class Members—and realized sizeable profits.

68.    Plaintiff and putative Class Members were harmed and suffered actual damages in that Plaintiff and putative Class Members did not receive the benefit of their bargain as purchasers of the Products, which were represented as safe and effective hair products. To this end, Plaintiff and putative Class Members paid for Products that were unsafe, could cause scalp irritation and hair loss, and do not safely nourish, cleanse, and/or repair hair.

69.    Defendant developed and knowingly employed a labeling, advertising

**CLASS ACTION COMPLAINT**

and/or marketing strategy designed to deceive consumers into believing that the Products contain safe ingredients and can safely smooth, nourish, cleanse, revive, and/or repair hair.

70.     The purpose of Defendant's scheme was to stimulate sales, engender public trust, and enhance Defendant's profits.

71.     As the manufacturers, marketers, advertisers, distributors and/or sellers of the OGX Products, Defendant possess specialized knowledge regarding the Products and the content of the ingredients contained therein. Defendant has superior knowledge about which ingredients were or were not contained in the OGX Products and at what levels, and the safety risks to consumers associated with the Products and/or its ingredients.

72.     Defendant knew or should have known, but failed to disclose, that the Products contain one or more unsafe ingredients, including DMDM hydantoin, and do not safely smooth, nourish, cleanse, revive, and/or repair hair, as labeled and/or marketed by Defendant.

73.     Plaintiff and putative Class Members, as reasonable consumers, were misled by Defendant's labeling, representations and marketing of the Products.

74.     The unsafe ingredient(s) and the inability of the Products to safely nourish, cleanse, revive, and/or repair hair, leave consumers, such as Plaintiff and the putative Class Members, with no reason to purchase these Products at all, since

**CLASS ACTION COMPLAINT**

other proven and safer comparably priced products exist. The Products purchased by Plaintiff and Class Members were thus worthless, without the ability for safe consumer use. Had they been informed of the dangerous and unsafe nature of the Products, Plaintiff and Class Members would not have paid monies to purchase the Products at any price.

75.     The Products are defined as "cosmetics" under 21 U.S.C.S. § 321(i) of the Federal Food Drug & Cosmetic Act ("FDCA").

76.     Defendant's deceptive statements violate 21 U.S.C.S. § 362(a), which deems a cosmetic product misbranded when the label contains a statement that is "false or misleading in any particular."

77.     Defendant's conduct is also deceptive, unfair, and unlawful in that it violates the prohibition against the sale of adulterated and misbranded products under California's Sherman Laws, which adopt the federal labeling regulations as the food labeling requirements of the state. Cal. Health & Safety Code § 110100.

78.     The FDA promulgated regulations for compliance with the FDCA at 21 C.F.R. §§ 701 *et seq*. (for cosmetics).

79.     The introduction of misbranded cosmetics into interstate commerce is prohibited under the FDCA and all parallel state statutes cited in this Complaint.

80.     Plaintiff and putative Class Members would not have purchased the Products had they known the Products contained one or more unsafe ingredients and

**CLASS ACTION COMPLAINT**

are incapable of safely smoothing, nourishing, cleansing, and/or repairing hair.

## **PLAINTIFF'S FACTS**

81. Plaintiff, Daniel Moreno, purchased several Products during the class period in Los Angeles County, California. On September 16, 2020, Plaintiff purchased one bottle of OGX Biotin & Collagen Extra Strength Shampoo (13 fl. oz.) for $8.49, and one bottle of OGX Biotin & Collagen Extra Strength Conditioner (13 fl. oz.) for $8.49, from the Target store located at 2700 W 120th St, Hawthorne, CA 90250. In or around November and December 2020, Plaintiff purchased one bottle of OGX Youth Enhancing + Sake Essence Shampoo (13 fl. oz), one bottle of OGX Youth Enhancing + Sake Essence Conditioner (13 fl. oz), and one bottle of OGX Thick and Full + Biotin & Collagen Shampoo (13 fl. oz) from the Target store located at 2700 W 120th St, Hawthorne, CA 90250.

82. Before purchasing the Products, Plaintiff reviewed some basic information about the Products on the Products' labels and purchased them for personal and/or household use, and not resale. At the time of purchasing his Products, Plaintiff understood the Product's label and accompanying disclosures to convey that the Products were safe and healthy to use as hair products. Plaintiff relied on these representations, and Defendant's nondisclosure regarding the unsafe and/or dangerous nature of the Products, in deciding to purchase Defendant's Products. Accordingly, these representations and nondisclosures were part of the basis of the

22

bargain; Plaintiff would not have purchased the Products had he known of Defendant's nondisclosures or that Defendant's representations were not true. Plaintiff, therefore, did not receive the benefit of his bargain because Defendant's Products are not safe and healthy to use as hair products.

83.     Plaintiff purchased Products for safe and healthy hair maintenance.

84.     Before using the Products, Plaintiff followed the instructions for application on the Products' labels, as directed by Defendant.

85.     Shortly following his use of the OGX Youth Enhancing + Sake Essence Products, Plaintiff began to experience minor hair loss. This continued with Plaintiff's purchase and use of the OGX Thick and Full + Biotin & Collagen Products.

86.     Following Plaintiff's ceasing to use the Products, his experience of hair loss ended.

87.     Plaintiff reasonably expected that the Products he purchased did not contain dangerous or unsafe ingredients which could cause scalp irritation or hair loss. Further, Plaintiff reasonably expected that if Defendant, the company primarily responsible for developing, manufacturing, marketing and distributing the OGX Products, knew that the Products contained dangerous or unsafe ingredients which could cause hair loss, Defendant would have disclosed these facts to consumers as soon as it determined there was a widespread problem, rather than attempting to

conceal the problem.

88.     As a result of Defendant's concealment, misrepresentations and omissions, Plaintiff purchased the Products. Had Plaintiff known the true nature of the Products, he would not have purchased any of them.

## COMMON FACTUAL ALLEGATIONS

89.     Johnson & Johnson is the company primarily responsible for developing, manufacturing, marketing and distributing OGX Products. OGX is a brand with several lines of hair and body products.

90.     Although OGX branded Shampoo and Conditioner Products differ slightly in their formulas and ingredient makeups, the Products' all contain an ingredient, or combination of ingredients, that may cause consumers to experience hair loss and/or scalp irritation, along with other negative implications. In particular, DMDM hydantoin, a harmful formaldehyde donor, is found, *inter alia*, in the following Products as stated on the Products' back labels:

- Below is the ingredient list located on the back label of the OGX Biotin + Collagen Shampoo:

**CLASS ACTION COMPLAINT**



- Below is the ingredient list located on the back label of the OGX Biotin + Collagen Conditioner:



- Below is the ingredient list located on the back label of the OGX Renewing Argan Oil of Morocco Shampoo:

- Below is the ingredient list located on the back label of the OGX Renewing Argan Oil of Morocco Conditioner:

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10



11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- Below is the ingredient list located on the back label of the OGX Anti-Breakage and Keratin Oil Shampoo:

- Below is the ingredient list located on the back label of the OGX Anti-Breakage and Keratin Oil Conditioner:



- Below is the ingredient list located on the back label of the OGX Detox + Pomegranate & Ginger Shampoo:

26

**CLASS ACTION COMPLAINT**



- Below is the ingredient list located on the back label of the OGX Detox + Pomegranate & Ginger Conditioner:



- Below is the ingredient list located on the back label of the OGX Marula Oil Conditioner:

- Below is the ingredient list located on the back label of the OGX Nicole Guerriero Midnight Kisses Shampoo:

27

1

2

3

4

5

6

7

8



- Below is the ingredient list located on the back label of the OGX Nicole Guerriero Midnight Kisses Conditioner:

9

10

11

12

13

14

15

16

17



- Below is the ingredient list located on the back label of the OGX Nicole Guerriero Mistletoe Wishes Shampoo:

18

19

20

21

22

23

24

25

26

27

- Below is the ingredient list located on the back label of the OGX Nicole Guerriero Mistletoe Wishes Conditioner:

28

28



- Below is the ingredient list located on the back label of the OGX Nicole Guerriero Ice Berry Queen Shampoo:



- Below is the ingredient list located on the back label of the OGX Nicole Guerriero Ice Berry Queen Conditioner:



29

- Below is the ingredient list located on the back label of the OGX Extra Strength Hydrate & Repair and Argan Oil of Morocco Shampoo:



- Below is the ingredient list located on the back label of the OGX Extra Strength Hydrate & Repair and Argan Oil of Morocco Conditioner:



- Below is the ingredient list located on the back label of the OGX Ever Straightening and Brazilian Keratin Therapy Shampoo:



30

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- Below is the ingredient list located on the back label of the OGX Ever Straightening and Brazilian Keratin Therapy Conditioner:



- Below is the ingredient list located on the back label of the OGX Kandee Johnson Candy Gumdrop Shampoo:



- Below is the ingredient list located on the back label of the OGX Kandee Johnson Candy Gumdrop Conditioner:

**CLASS ACTION COMPLAINT**



- Below is the ingredient list located on the back label of the OGX Kandee Johnson Frosted Sugar Cookie Shampoo:



- Below is the ingredient list located on the back label of the OGX Kandee Johnson Frosted Sugar Cookie Conditioner:

- Below is the ingredient list located on the back label of the OGX Kandee Johnson Sparkling Cider Shampoo:

32

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8



9   • Below is the ingredient list located on the back label of the OGX
10    Kandee Johnson Sparkling Cider Conditioner:



18   • Below is the ingredient list located on the back label of the OGX
19    Quenching + Coconut Curls Shampoo:



27   • Below is the ingredient list located on the back label of the OGX
28    Quenching + Coconut Curls Conditioner:

33

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8



9

- Below is the ingredient list located on the back label of the OGX Hydrate + Defrizz and Kukui Oil Conditioner:

10
11
12
13
14
15



16
17

- Below is the ingredient list located on the back label of the OGX Youth Enhancing + Sake Essence Conditioner:

18
19
20
21
22
23
24
25
26
27

91.    For approximately a decade, Defendant has known that DMDM

28

34

hydantoin can cause or contribute to hair loss and scalp irritation when used as a preservative in hair products, including shampoo and conditioner products. For this reason, in August 2012, Defendant announced plans to remove DMDM hydantoin, and other similar ingredients, from all consumer products by the end of 2015.[29]

92.     In light of their knowledge of the harm which DMDM hydantoin can cause, Defendant, upon information and belief, did in fact remove DMDM hydantoin as an ingredient from existing consumer products at that time.  However, when Johnson & Johnson acquired Vogue International, including their line of OGX products, Defendant failed to change the ingredient profile of the products that did not maintain the same standards for consumer safety.  Thus, since 2016, Johnson & Johnson has continued to market, sell and profit off of the Products that contain ingredients knew could harm consumers, including DMDM hydantoin.

93.     Johnson & Johnson's own website says the following about preservatives used in consumer products:

Many preservatives do not meet our safety and care standards. Examples of preservatives that we will not use in any skin care product include bromochlorophen, formaldehyde, paraformaldehyde, formic acid, bronopol, dichlorobenzyl alcohol, triclocarban, p-chloro-m-

---

[29] *See* NY Times Article, "*Johnson & Johnson to Remove Formaldehyde From Products*", dated August 15, 2012 found at https://www.nytimes.com/2012/08/16/business/johnson-johnson-to-remove-formaldehyde-from-products.html (last accessed on March 4, 2021).

**CLASS ACTION COMPLAINT**

cresol, triclosan, methenamine, ketoconazole, silver citrate, thimerosal, chloroacetamide, 5-bromo-5-nitro-1,3-dioxane, butylparaben, isobutylparaben, and benzylparaben. In addition, examples of preservatives that don't meet our standards for baby products also include methylparaben, ethylparaben, propylparaben, iodopropynyl butylcarbamate, quaternium-15, **DMDM hydantoin**, imidazolidinyl urea, and diazolidinyl urea.

(Emphasis added.)[30]

94.    Despite having public knowledge since at least 2012 that DMDM hydantoin, as a formaldehyde donor, can cause or contribute to hair loss and scalp irritation, Defendant has inexplicably continued to include this ingredient as a preservative in some of its OGX products *while simultaneously* (1) not using DMDM hydantoin as a preservative in many of its other OGX products, (2) not using DMDM hydantoin in other Johnson & Johnson brands of shampoo and conditioner, and (3) not using DMDM hydantoin in otherwise identical OGX products sold in other countries.

95.    Upon information and belief, despite Johnson & Johnson's past acknowledgment that use of DMDM hydantoin was not appropriate for consumers,

---

[30] https://safetyandcarecommitment.com/ingredients/preservatives, last accessed Mar. 4, 2021

**CLASS ACTION COMPLAINT**

including babies, it has not made any attempt to reformulate the OGX Products containing DMDM hydantoin in the United States since acquiring the brand in 2016. Defendant has, by contrast, reformulated the OGX Products in other countries.

96.     Although Defendant was, or should have been, aware of the high potential for toxicity or allergic reaction caused by one or more of the ingredients in the OGX Products, including, but not limited to, DMDM hydantoin, it has and continues to fail to warn consumers about possible reactions and harmful effects on any of the OGX Products' labeling, including hair loss and scalp irritation.

97.     The package labeling on the Products and Defendant's websites and other marketing materials have not in the past or present warned Plaintiff and members of the Class that they are at risk of significant hair loss and/or scalp irritation upon proper application of the Products. Plaintiff and Class Members are typical U.S. consumers, who were not familiar and do not possess the knowledge or expertise to understand the nature and effects of DMDM hydantoin and other shampoo and conditioner ingredients. Accordingly, Defendant has and continues to mislead and deceive the public with its failure to warn and material omissions, placing its customers in harm's way, all for the sake of increased profits.

98.     Consumers reasonably expect that their hair care products, including shampoos and conditioners, will not cause material hair loss and/or scalp irritation because of defective design, formulae, ingredients, or manufacturing, or because of

**CLASS ACTION COMPLAINT**

inadequate research of due diligence on the part of the manufacturer. Specifically in regards to the Products, consumers, including Plaintiff and members of the Class, had no expectation at the time of purchase that the OGX Products would or could cause scalp irritation and/or cause their hair to fall out.

99.     Consumers, including Plaintiff and members of the Class, also reasonably expect that if Johnson & Johnson, the company primarily responsible for developing, manufacturing, marketing and distributing the OGX Products, knew that the OGX Products would or could cause irritation and/or hair loss (whether by proper application or by misapplication), it would disclose these material facts to consumers as soon as it determined there was a widespread problem, rather than attempting to conceal the problem. By downplaying, concealing and misrepresenting the Products and the safety and risks of their use, Defendant omitted material facts necessary for a consumer to make a reasonable purchasing decision under the circumstances. . Defendant continued to create and perpetuate a false public perception that there was little or no risk of harm from the use of its OGX Products, even knowing of the Products' inclusion of DMDM hydantoin and dangers to users hair and scalps, and despite previously stating their commitment to removing such unsafe or harmful ingredients from their products.

100.    Moreover, Defendant received  complaints of Class Members who have lost their hair or endured scalp irritation as a result of the Products' typical use

**CLASS ACTION COMPLAINT**

and application. Despite this knowledge, Defendant attempted to conceal and downplay these consumer complaints and the Products' negative effects at the expense of Plaintiff and members of the Class.

101. Defendant manufactures, advertises, markets, distributes, and sells the OGX Products throughout the United States, and in California. As alleged with specificity herein, Defendant did so through an extensive, uniform, nationwide advertising and marketing campaign, specifically marketing the Products as shampoos and conditioners that make hair "fuller, smoother, straighter, curlier, or bouncier and smell irresistible."

102. Defendant labeled, advertised, promoted and sold the OGX Products targeting men and women who wanted to safely nourish, cleanse, and repair hair in order to obtain smooth, shiny, and healthy hair. Through an extensive marketing campaign and via its OGX website and packaging, Defendant made a number of affirmative misrepresentations, including that the Products were formulated to safely nourish, cleanse, revive, and repair hair in order to obtain the desired results.

103. In fact, Defendant knew but failed to disclose to Plaintiff and the putative Class the danger of hair loss and/or scalp irritation caused by one or more ingredients in the Products, including the formaldehyde donor ingredient DMDM hydantoin.

104. Defendant failed to properly warn consumers on their packaging or

CLASS ACTION COMPLAINT

elsewhere of the risks and dangers attendant to the use of such a strong preservative and human toxicants on their hair and scalp – even well after Defendant knew or should have known of its hazards. Defendant further continued to conceal the dangers of the Products by failing to recall the Products and by failing to reformulate the Products like Defendant has in other countries.

105.    As a result of Defendant's omissions and misrepresentations, Plaintiff and putative Class Members have suffered injury in fact, including economic damages.

106.    Plaintiff brings this suit to halt the unlawful sales and marketing of the Products by Defendant and to recover economic damages he and the Class sustained as a result. Given the massive quantities of the Products sold all over the country, this class action is the proper vehicle for addressing Defendant's misconduct and for attaining needed class-wide relief for those affected.

## ESTOPPEL FROM PLEADING AND
## TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

107.    Plaintiff and members of the putative Classes make the claims herein within the applicable statutes of limitation for the claims presented here. Defendant had knowledge and information detailing the Products' propensity to cause or contribute to hair loss and/or scalp irritation but failed to disclose this information to consumers. Plaintiff and members of the putative Classes, as reasonable

**CLASS ACTION COMPLAINT**

consumers acting reasonably under the circumstances, could not reasonably have known that the Products would cause or contribute to hair loss and scalp irritation. Rather, consumers relied upon Defendant's misrepresentations and omissions, including the statements on the Products' labeling as set forth above.

108.    Once Plaintiff incurred damages, he promptly acted to preserve his rights, filing this action. Defendant is therefore estopped from asserting any statute of limitation defense that might otherwise be applicable to the Plaintiff's and Class claims asserted herein.

## CLASS ACTION ALLEGATIONS

109.    Plaintiff brings this action on behalf of himself and the following Classes pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3). Specifically, the Classes are defined as:

> **National Class**: All persons in the United States who purchased the Products.

In the alternative, Plaintiff brings this action on behalf of the following State Sub-Class:

> **California Sub-Class**: All persons in the State of California who purchased the Products.

110.    Excluded from the Classes are (a) any person who purchased the Products for resale and not for personal or household use, (b) any person who signed

**CLASS ACTION COMPLAINT**

a release of any Defendant in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any Defendant or any entity in which a Defendant has a controlling interest, (d) any legal counsel or employee of legal counsel for any Defendant, and (e) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

111.    Plaintiff reserves the right to amend the definition of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

112.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains unknown at this time, upon information and belief, there are thousands, if not hundreds of thousands, of putative Class Members. Moreover, the number of members of the Classes may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

113.    **Predominance of Common Questions of Law and Fact – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact

exist as to all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are limited to, the following:

    a.  Whether the Products contain the defect alleged herein;

    b.  Whether Defendant failed to appropriately warn Class Members of the damage that could result from use of the Products;

    c.  Whether Defendant had actual or imputed knowledge of the defect but did not disclose it to Plaintiff and the Classes;

    d.  Whether Defendant promoted the Products with false and misleading statements of fact and material omissions;

    e.  Whether Defendant's marketing, advertising, packaging, labeling, and/or other promotional materials for the Products are deceptive, unfair or misleading;

    f.  Whether Defendant's actions and omissions violate California law;

    g.  Whether Defendant's conduct violates public policy;

    h.  Whether Defendant's acts, omissions or misrepresentations of material facts constitute fraud;

    i.  Whether Plaintiff and putative members of the Classes have suffered an ascertainable loss of monies or property or other value as a result of Defendant's acts, omissions or misrepresentations of

**CLASS ACTION COMPLAINT**

material facts;

j.   Whether Defendant was unjustly enriched at the expense of Plaintiff and members of the putative Classes in connection with the Products;

k.   Whether Plaintiff and members of the putative Classes are entitled to monetary damages and, if so, the nature of such relief; and

l.   Whether Plaintiff and members of the putative Classes are entitled to equitable, declaratory or injunctive relief and, if so, the nature of such relief.

114.   Pursuant to Rule 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the putative Classes, thereby making final injunctive or corresponding declaratory relief appropriate with respect to the putative Classes as a whole. In particular, Defendant has manufactured, marketed, advertised, distributed and sold Products that are deceptively misrepresented as being able to safely smooth, nourish, cleanse, and/or repair hair.

115.   **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of those of the absent Class Members in that Plaintiff and the Class Members each purchased and used the Products and each sustained damages arising from Defendant's wrongful conduct, as alleged more fully herein. Plaintiff shares the aforementioned facts and legal claims or questions with putative members of the

**CLASS ACTION COMPLAINT**

Classes, and Plaintiff and all members of the putative Classes have been similarly affected by Defendant's common course of conduct alleged herein. Plaintiff and all members of the putative Classes sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's deceptive misrepresentations regarding the ability of the Products to safely smooth, nourish, cleanse, and/or repair hair, as alleged herein.

116.   **Adequacy – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Classes. Plaintiff has retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiff and his counsel are committed to the vigorous prosecution of this action. Plaintiff does not have any conflicts of interest or interests adverse to those of putative Classes.

117.   **Insufficiency of Separate Actions– Federal Rule of Civil Procedure 23(b)(1).** Absent a class action, Plaintiff and members of the Classes will continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially

impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. Accordingly, the proposed Classes satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

118. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and all Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

119. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

    a. The damages suffered by each of the individual members of the putative Classes do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct;

    b. Even if individual members of the Classes had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

    c. The claims presented in this case predominate over any questions of law or fact affecting individual members of the Classes;

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

d. Individual joinder of all members of the Classes is impracticable;

e. Absent a Class, Plaintiff and members of the putative Classes will continue to suffer harm as a result of Defendant's unlawful conduct; and

f. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the putative Classes can seek redress for the harm caused by Defendant.

120. In the alternative, the Classes may be certified for the following reasons:

a. The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendant;

b. Adjudications of claims of the individual members of the Classes against Defendant would, as a practical matter, be dispositive of the interests of other members of the putative Classes who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests; and

CLASS ACTION COMPLAINT

c. Defendant has acted or refused to act on grounds generally applicable to the members of the putative Classes, thereby making appropriate final and injunctive relief with respect to the putative Classes as a whole.

## CLAIMS FOR RELIEF
## COUNT I
**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200 et seq. ("UCL")**
**(On Behalf of the California Sub-Class)**

121.   Plaintiff re-alleges and incorporates by reference the allegations contained in the proceeding paragraphs, as though set forth fully herein.

122.   The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

123.   The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute business acts and practices.

124.   Unlawful: The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

a. The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq.;

b. The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq.;

48

    c.  The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 et seq.; and

    d.  The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 et seq.

125.    Unfair: Defendant's conduct with respect to the labeling, advertising, and sale of the Products was "unfair" because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to their victims.

126.    Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of: the Consumers Legal Remedies Act, the False Advertising Law, the Federal Food, Drug, and Cosmetic Act, and the California Sherman Food, Drug, and Cosmetic Law.

127.    Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

128.    Fraudulent: A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer

49

**CLASS ACTION COMPLAINT**

test.

129.    As set forth herein, Defendant's representations on the Products' labeling that the Products are safe and can safely smooth, nourish, cleanse, and/or repair hair are likely to mislead reasonable consumers to believe the Products are safe and effective for purchase to use on their hair.

130.    Defendant profited from its sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

131.    Plaintiff and Class Members are likely to continue to be damaged by Defendant's deceptive trade practices, because Defendant continues to disseminate misleading information on the Products' packaging, and Plaintiff and Class Members may continue to purchase shampoos and conditioners from amongst the Products. Thus, injunctive relief enjoining Defendant's deceptive practices is proper.

132.    Defendant's conduct caused and continues to cause substantial injury to Plaintiff and the other Class Members. Plaintiff has suffered injury in fact as a result of Defendant's unlawful conduct.

133.    In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

134.    Plaintiff and the Class also seek an order for and restitution of all

50

monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

## COUNT II

**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500 ("FAL")**
**(On Behalf of the California Sub-Class)**

135.   Plaintiff repeats and realleges the allegations in the proceeding paragraphs as if fully set forth herein.

136.   The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

137.   It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id*.

138.   As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendant relating to the Products misled consumers acting reasonably as to the safety of the ingredients and the Products' ability to safely smooth, nourish, cleanse, and/or repair hair

51

139.    Plaintiff suffered injury in fact as a result of Defendant's actions as set forth herein because he purchased the Products in reliance on Defendant's false and misleading labeling claims that the Products, among other things, are safe and can safely smooth, nourish, cleanse, and/or repair hair.

140.    Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant have advertised the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from its advertising.

141.    Defendant profited from its sale of the falsely and deceptively advertised Products to unwary consumers.

142.    As a result, Plaintiff, the California Sub-Class members, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

143.    Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of himself and the California Sub-Class, seeks an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

## **COUNT III**
### **Violation of California's Consumer Legal Remedies Act**

## Cal. Civ. Code § 1750 et seq. ("CLRA")
### (On Behalf of the California Sub-Class)

144.    Plaintiff repeats and realleges the allegations in the proceeding paragraphs as if fully set forth herein.

145.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

146.    Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiff and Class Members, and violated and continue to violate the following sections of the CLRA:

      a.    § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

      b.    § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

      c.    § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

      d.    § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

CLASS ACTION COMPLAINT

147.   Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

148.   Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

149.   Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff will provide a letter to Defendant concurrently with the filing of this Class Action Complaint or shortly thereafter with notice of its alleged violations of the CLRA, demanding that Defendant correct such violations, and providing it with the opportunity to correct its business practices. If Defendant does not thereafter correct its business practices, Plaintiff will amend (or seek leave to amend) the complaint to add claims for monetary relief, including restitution and actual damages under the Consumers Legal Remedies Act.

150.   Pursuant to California Civil Code § 1780, Plaintiff seeks injunctive relief, his reasonable attorney fees and costs, and any other relief that the Court deems proper.

**COUNT IV**

**Fraud**

**(On Behalf of the Nationwide and/or**

**California Sub-Class)**

151.   Plaintiff repeats and realleges the allegations in the proceeding paragraphs as if fully set forth herein.

54

152.    Plaintiff brings this cause of action on behalf of himself, the Nationwide Class and/or the California Class against Defendant.

153.    As alleged herein, Defendant, Johnson & Johnson, knowingly made material misrepresentations and omissions regarding the Products on the Products' labeling and packaging in the Products' advertisements, and/or on its website.

154.    Defendant made these material misrepresentations and omissions in order to induce Plaintiff and putative Class Members to purchase the Products.

155.    Rather than inform consumers that the Products contained a defect that caused hair loss upon proper application and did not otherwise perform as represented and for the particular purpose for which it was intended, Defendant claims in marketing materials and its marketing campaign for the Products that the Products will "smooth," "deeply nourish," "gently cleanse," and "repair hair,"[31]  in order to mislead consumers that the Products have the ability to safely smooth, nourish, cleanse, and/or repair hair.

156.    The inclusion of the defect that causes hair loss and/or scalp irritation upon proper application renders the Products unable to safely smooth, nourish, cleanse, and repair hair.

157.    Defendant knew the Products were incapable of safely smoothing, nourishing, cleansing, and/or repairing hair, but nevertheless made such

---

[31] https://www.OGX.com/us/en/collections/keratin-smooth.html ("How it Works")

**CLASS ACTION COMPLAINT**

representations through the marketing, advertising and on the Products' labeling with intent to defraud consumers and induce their purchase of the Products. In reliance on these and other similar misrepresentations, Plaintiff and putative Class Members were induced to, and did, pay monies to purchase the Products.

158.     Had Plaintiff and the Class known the truth about the Products, they would not have purchased the Products.

159.     As a proximate result of the fraudulent conduct of Defendant, Plaintiff and the putative Class paid monies to Defendant, through their regular retail sales channels, to which Defendant are not entitled, and have been damaged in an amount to be proven at trial.

## COUNT V
### Unjust Enrichment
### (On Behalf of the Nationwide and/or
### California Sub-Class)

160.     Plaintiff repeats and realleges the allegations in the proceeding paragraphs as if fully set forth herein.

161.     Plaintiff brings this cause of action on behalf of himself, and the putative Classes against Defendant.

162.     Plaintiff and putative Class Members conferred a benefit on Defendant when they purchased the Products, of which Defendant had knowledge. By its wrongful acts and omissions described herein, including selling the Products, which

**CLASS ACTION COMPLAINT**

contain a defect that caused hair loss and other harm upon proper application and did not otherwise perform as represented and for the particular purpose for which they were intended, Defendant was unjustly enriched at the expense of Plaintiff and putative Class Members.

163.    Plaintiff's detriment and Defendant's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

164.    Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and putative Class Members under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the Products.

165.    Defendant has been unjustly enriched in retaining the revenues derived from Class Members' purchases of the Products which were deceptively labeled and advertised. The retention of such revenues under these circumstances is unjust and inequitable because Defendant manufactured defective Products, misrepresented the nature of the Products, misrepresented their ingredients, and knowingly marketed and promoted dangerous and defective Products without proper disclosures, and caused injuries to Plaintiff and Class Members who would not have purchased the Products if the true facts concerning the Products had been known.

**CLASS ACTION COMPLAINT**

166. Plaintiff and putative Class Members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the Products had they known the true nature of the Products and the misstatements regarding what the Products were and what they contained.

167. Defendant either knew or should have known that payments rendered by Plaintiff and putative Class Members were given and received with the expectation that the Products were able to safely nourish, cleanse, and repair hair as represented by Defendant in advertising, on Defendant's websites, and on the Products' labels and packaging. It is therefore inequitable for Defendant to retain the benefit of payments under these circumstances.

168. Plaintiff and putative Class Members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

169. When required, Plaintiff and Class Members are in privity with Defendant because Defendant's sale of the Products was either direct or through authorized sellers. Purchase through authorized sellers is sufficient to create such privity because such authorized sellers are Defendant's agents for the purpose of the sale of the Products.

170. As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits,

benefits, and other compensation obtained by Defendant for their inequitable and unlawful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated members of the Classes, prays for relief and judgment, including entry of an order:

a.   Declaring that this action is properly maintained as a class action, certifying the proposed Class(es), appointing Plaintiff as Class Representative and appointing Plaintiff's counsel as Class Counsel;

b.   Directing that Defendant bear the costs of any notice sent to the Class(es);

c.   Declaring that Defendant must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Products, or order Defendant to make full restitution to Plaintiff and the members of the Class(es) except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

d.   Awarding restitution and other appropriate equitable relief;

e.   Granting an injunction against Johnson & Johnson to enjoin it from conducting its business through the unlawful, unfair and fraudulent acts

CLASS ACTION COMPLAINT

or practices set forth herein;

f.    Granting an Order requiring Johnson & Johnson to fully and appropriately recall the Products, to remove the claims on its website and elsewhere that the Products are safe to use, and to fully and properly disclose the safety risks associated with the Products to anyone who may still be at risk of buying and using the Products;

g.    Ordering a jury trial and damages according to proof;

h.    Awarding Plaintiff and members of the Class(es) statutory damages, as provided by the applicable state consumer protection statutes invoked above, except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

i.    Enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

j.    Awarding attorneys' fees and litigation costs to Plaintiff and members of the Class(es);

k.    Awarding civil penalties, prejudgment interest and punitive damages as permitted by law; and

l.    Ordering such other and further relief as the Court deems just and proper.

//

CLASS ACTION COMPLAINT

## **JURY DEMAND**

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated: March 26, 2021                    Respectfully submitted,

                                      /s/ Gayle M. Blatt
                                      GAYLE M. BLATT
                                      **CASEY GERRY SCHENK**
                                      **FRANCAVILLA BLATT &**
                                      **PENFIELD, LLP**
                                      110 Laurel Street
                                      San Diego, California 92101
                                      T: 619-679-9972
                                      F: 619-544-9232
                                      gmb@cglaw.com

                                      Gary S. Graifman
                                      **KANTROWITZ, GOLDHAMER &**
                                      **GRAIFMAN, P.C.**
                                      135 Chestnut Ridge Road
                                      Suite 200
                                      Montvale, New Jersey 07645
                                      T: 845-356-2570
                                      F: 845-356-4335
                                      ggraifman@kgglaw.com

                                      Melissa R. Emert
                                      **KANTROWITZ, GOLDHAMER &**
                                      **GRAIFMAN, P.C.**
                                      747 Chestnut Ridge Road
                                      Suite 200
                                      Chestnut Ridge, New York 10977
                                      T: 845-356-2570
                                      F: 845-356-4335
                                      memert@kgglaw.com

                                      *Attorneys for Plaintiff and the Proposed*
                                      *Class*

**CLASS ACTION COMPLAINT**

### CLRA Venue Declaration
### Pursuant to California Civil Code Section 1780(d)

I, Gayle M. Blatt, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and admitted to practice in the Central District. I am an attorney at Casey Gerry Schenk Francavilla Blatt & Penfield, LLP, counsel of record for Plaintiff in this action. I have personal knowledge of the facts set forth in this declaration and, if call as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Central District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at Boynton Beach, Florida this 26th day of March, 2021.

/s/ Gayle M. Blatt
GAYLE M. BLATT

62

**CLASS ACTION COMPLAINT**